UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**ROBERT JOHN HAGAN, III**    )
                              )
    **Plaintiff,**           )
                              )
vs.                           )
                              )  Civil Action Number
                              )    **1:14-cv-00293-AKK**
**CAROLYN W. COLVIN, Acting** )
**Commissioner of Social Security,** )
                              )
    **Defendant.**           )

# MEMORANDUM OPINION

Plaintiff Robert John Hagan, III ("Hagan") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Hagan filed his application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on April 11, 2011, R. 62, 127-140, alleging a disability onset date of April 1, 2011, R. 127, due to diabetes,

1

neuropathy, anxiety, depression, and heart problems, R. 71. After the SSA denied his application on September 11, 2011, R. 62, Hagan requested a hearing, R. 64. At the time of the hearing on May 6, 2013, R. 17, Hagan was 59 years old, R. 127, with a college education and had past work experience as a pharmacist, yard worker, and telemarketer, R. 188-89, 226. Hagan worked until his myocardial infarction on June 11, 2011, over two months after his alleged onset of disability, and returned to his job as a telemarketer on a part time basis after his unemployment compensation benefits expired. R. 24, 38, 53-54, 175-180.

The ALJ denied Hagan's claim on May 30, 2013, R. 14–26, which became the final decision of the Commissioner when the Appeals Council refused to grant review on December 18, 2013, R. 1-4. Hagan then filed this action pursuant to § 205(g) of the Act, 42 U.S.C. § 205(g), on February 18, 2014. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or

mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*.  See 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

5

ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Hagan had not engaged in substantial gainful activity since his application date and therefore met Step One. R. 19. Next, the ALJ acknowledged that Hagan's severe impairments of a history of post myocardial infarction, status post cardiac artery bypass grafts times three, ischemic cardiomyopathy class II, diabetes mellitus, diabetic neuropathy, hypertension, and hyperlipidemia met Step Two. R. 20. The ALJ then proceeded to the next step and found that Hagan did not satisfy Step Three since he "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1." R. 19 (internal citations omitted). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that Hagan has the residual functional capacity ("RFC")

> to lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk six hours in an eight hour day; and sit six hours in an eight-hour day. He can never climb a ladder, rope, or scaffolding; never balance on uneven terrain; must avoid concentrate[d] exposure to extreme cold, extreme heat, humidity, dusts, fumes, odors, gases, and poor ventilation; and cannot work around unprotected heights.

R. 23. In light of Hagan's RFC, the ALJ determined that Hagan "is capable of performing past relevant work as a telemarketer." R. 26. Because the ALJ answered Step Four in the negative, she determined that Hagan was not disabled. *Id.*

## V. Analysis

The court now turns to Hagan's contention that the ALJ failed to properly evaluate the credibility of Hagan's subjective complaints of pain consistent with the Eleventh Circuit's pain standard by (1) failing to properly consider Hagan's depression, (2) mischaracterizing Hagan's work history, (3) improperly considering Hagan's receipt of unemployment benefits, and (4) mischaracterizing the record when finding that Hagan had recovered from his myocardial infarction

within 12 months. For the reasons stated below, the court finds that the ALJ applied the correct legal standards and her opinion is supported by substantial evidence.

### A. The ALJ Properly Considered Hagan's Depression

Hagan first contends that the ALJ disregarded evidence that Hagan's treatment records from 2007 to 2013 indicate a history of severe depression and erred by failing to properly categorize Hagan's depression as a severe impairment. A review of the records shows that the ALJ, in fact, properly considered Hagan's complaints of depression, and recognized that Dr. Stephen Bowen, M.D., Hagan's treating physician, reported in 2007 and 2011 that Hagan had a history of depression beginning with his incarceration and divorce. R. 305, 308. However, the ALJ determined that the depression was situational and did not cause "more than minimal limitation in [Hagan's] ability to perform basic mental work activities for twelve continuous months and is therefore non-severe." R. 20. In making this determination, the ALJ considered the four broad functional areas indicated in the disability regulations for evaluating mental disorders ("Paragraph B Criteria"), *see* 20 C.F.R. § 404, Subpart P, App'x 1, and found that Hagan had "mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and no episodes of de-compensation, each of extended duration." R. 20.

The substantial evidence supports the ALJ's findings under the Paragraph B Criteria as reflected by the multiple reasons outlined by the ALJ. First, the ALJ considered Hagan's own testimony, noting that Hagan had a driver's license, and could cook, wash dishes, vacuum for short periods and change the sheets on his bed occasionally, R. 21, 42-43, and that Hagan testified that he attended a weekly Alcoholics Anonymous ("AA") meeting and was able to return to his work as a telemarketer on a part-time basis after his unemployment compensation ended. R. 21, 45, 49, 53-54, 57. Second, the ALJ considered a 2011 consultative psychological evaluation by Robert Kline, Ph.D.,[1] in which Dr. Kline concluded that Hagan did not have a psychiatric disorder, based on his findings that Hagan had a cooperative attitude and normal thought and conversation, did his own housework, laundry, and food preparation, attended church twice a month, went to stores two or three times a week, and talked with family and friends on a daily basis. R. 21, 317-318. Third, the ALJ considered the opinion of Dr. Robert Estock, M.D., who reviewed the evidence on behalf of the State Agency on September 21, 2011, and concluded that Hagan had a mild impairment in the activities of daily

---

[1] The ALJ noted that, although Dr. Kline is licensed by the state of Alabama as a counselor and not a psychologist, and therefore is not an acceptable medical source under the regulations, his opinion can be evaluated as an "other source" in order to indicate the severity of Hagan's impairments and how it affects his ability to function. *See* 20 C.F.R. 404.1513(d); 20 C.F.R. 416.913(d). In light of this, the ALJ noted that she used Dr. Kline's evaluation "as a summation of the history taken of what the claimant reported to Dr. Kline." R. 21.

9

living and social functioning, no impairment in concentration, persistence, and pace, and no episodes of decompensation each of extended duration. R.22, 431. Fourth, the ALJ referenced the opinion of Krystal Truss, a Certified Registered Nurse Practitioner who noted in February of 2012 that Hagan was negative for anxiety and depression, in April and May of 2012, that Hagan was oriented to time, place, person, and situation, had normal insight and exhibited normal judgment, and, as late as October of 2012, indicated that Hagan was negative for anxiety and depression. R. 22, 443-464. Finally, the ALJ recognized that Hagan sought treatment for exacerbation of depression in December 20, 2012, R. 506-515, but pointed out that the record fails to establish "that this episode would meet the durational requirement to be classified as a severe impairment." R. 22; *see* R. 508 (noting that Hagan is expected to "make progress" toward his treatment objectives); R. 515 (noting that Hagan presented with an appropriate affect, euthymic mood, normal characteristics of speech and orientation, an intact memory, and average judgment and insight).

Based on the court's review of the record, the court finds that the ALJ correctly determined that the longitudinal history of treatment shows that Hagan's depression has not caused more than minimal functional limitations on Hagan's ability to work. As the ALJ pointed out, Hagan continued to work until his myocardial infarction in June of 2011, is able to interact with people as reflected

10

by his ability to attend AA meetings, and the substantial number of entries in the record which report that Hagan was not suffering from depression or anxiety. R. 22.[2] Accordingly, the court finds that the ALJ applied correct legal standards in determining whether Hagan's depression constituted a severe impairment, and that the record contains substantial evidence to support the ALJ's decision.

> B.   The ALJ Properly Characterized Hagan's Work History

Hagan next argues that the ALJ's finding that Hagan "alleges disability as of April 1, 2011 and yet worked until his myocardial infarction on June 11, 2011," R. 24, is a mischaracterization of Hagan's work history, *see* doc. 12 at 6. Consequently, Hagan combats the alleged "insinuation that [his] work during that time period indicated he was not suffering from disabling symptoms" by arguing

---

[2] Hagan submitted new evidence to the AC consisting of treatment records from Cheaha Mental Health Center, dated April 8, 2013, as well as records dated July 8, 2013 through October 7, 2013, and June 13, 2013 through December 10, 2013. R. 2. The AC stated that it had considered the new evidence, but found that it did not provide a basis for changing the ALJ's decision. *Id.* Moreover, the AC determined that the records from July 2013 through December 2013 were information about a later time and did not affect the decision regarding disability beginning on or before May 30, 2013. *Id.* On appeal, Hagan challenges only the ALJ's decision and not the AC's decision denial of review. Doc. 12 at 1-3. Therefore, the court is not required to examine the newly submitted records from Cheaha Mental Health Center. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) ("[W]hen the AC has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence."); *see also Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1265-66 (11th Cir. 2007) ("[w]e understand *Falge* to hold that when a claimant challenges an [ALJ's] decision to deny benefits, but not the decision of the [AC] to deny review of the [ALJ], we need not consider evidence submitted to the [AC].")

that he was "only working part-time, around 22 hours a week, from April 2011 until his heart attack in June of 2011." Doc. 12 at 7. Hagan's contention misses the mark because the ALJ never found that Hagan engaged in substantial employment during the relevant period. To the contrary, the ALJ indicated that, even though Hagan earned $5,611.00 between January 1, 2011 and June 11, 2011, which could be considered substantial gainful activity, that "<u>additional information</u> would be required to make a definitive determination of substantial gainful activity." R. 19 (emphasis added). In other words, the ALJ never found that the work history at issue constituted substantial gainful activity. Hagan's contention further misses the mark because, when evaluating a claimant's subjective testimony regarding pain, an ALJ may consider a claimant's work history during the relevant period regardless of whether the claimant worked part-time or full-time. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Cooper v. Comm'r of Soc. Sec.*, 521 Fed. App'x 803, 805-08 (11th Cir. 2013) (claimant's part-time work as a hotel chain reservation specialist during the pendency of her social security application was evidence of ability to work despite the fact that she worked from home and her employer made allowances for her health); *Clapp v. Astrue*, No. 3:06cv334/MCR/EMT, 2008 WL 275880 (N.D. Fla. 2008) ("Although Plaintiff contends she could not work full time and her current employer made

12

accommodations for her, her employment was nevertheless properly considered by the ALJ, as work performed during any period in which the Plaintiff alleges that she was under a disability may demonstrate an ability to perform [substantial gainful activity]."); *see also Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the claimant's] . . . part-time work [was] inconsistent with her claim of disabling pain."). Consequently, the ALJ committed no error when he referenced the work activity in question. Therefore, the court finds that the ALJ properly characterized Hagan's work history, made no finding that that Hagan's work history was more substantial than what the record reflects, and properly considered the part-time work in weighing Hagan's credibility.

    C.    <u>The ALJ Properly Considered Hagan's Receipt of Unemployment Compensation in Determining Credibility</u>

Despite applying for and receiving unemployment benefits, which in Alabama require a certification that he is able to work and is looking for work, Hagan argues that the ALJ improperly considered his receipt of unemployment compensation in assessing his disability claim. *See* doc. 12 at 7; R. 24. Basically, Hagan argues that the ALJ should have disregarded his unemployment benefits application in which Hagan indicated that he was looking for work because of Hagan's representation that he could not have worked due to his limitations. *See* R. 38-39. The court disagrees because, as noted by Hagan in his brief, doc. 12 at 7,

and by the ALJ, R. 24, the claimant's certification that he is able to work, rather than the actual receipt of unemployment benefits, is what casts doubt on a subsequent claim of disability. *See* Ala. Code. § 25-4-77(a)(3) (Alabama unemployment beneficiaries must be physically and mentally able to perform work). Consequently, Hagan's claim that "he did not feel that he would have really been able to [work] because of all of his limitations," R. 38-39, actually bolsters the ALJ's credibility determination about Hagan's subjective statements regarding his inability to work. In that regard, Hagan's testimony that he was lying when he stated on his unemployment certification form that he was able to work, R. 38, is belied by the fact that he was, in fact, able to return to work as a telemarketer when the unemployment benefits expired, R. 54. Ultimately, because Hagan's challenge of the ALJ's credibility determination is basically a request that this court credit a statement that is in doubt (i.e. that Hagan did not actually think he could work) over a statement that is supported by later testimony and evidence of record (i.e. that Hagan had the ability to work), the court declines to do so because the regulations plainly allow an ALJ to refer to inconsistencies in the record when determining the credibility of a claimant's testimony regarding pain.  20 C.F.R. § 404.1529 (C)(4); *see Turner v. Colvin*, No. 5:12-cv-2648-LSC, 2013 WL 5574920 at *4 (N.D. Ala. 2013) ("The ALJ's conclusion that the receipt of unemployment benefits is a factor undermining Plaintiff's credibility is consistent with . . . the

14

great weight of legal authority."). In light of this, the ALJ's determination that Hagan's unemployment application detracted from his credibility is supported by substantial evidence.

>   D.   The ALJ Properly Found that Hagan Recovered From His Myocardial Infarction

Finally, Hagan argues that his June 11, 2011 acute myocardial infarction undermines the ALJ's determination that "the totality of the evidence reveals that after a reasonable period of recovery, which was less than twelve months, the claimant was capable of performing light exertional activities within the scope of his residual functional capacity," R. 24; *see* doc. 12 at 9. The court disagrees because, as the ALJ explained, substantial evidence from the medical record suggests that, after a period of recovery, Hagan was capable of returning to light activities. R. 25. Specifically, as the ALJ first pointed out, although Hagan suffered a myocardial infarction in June of 2011, by August of 2011, Dr. Saema Mizra, Hagan's cardiologist, reported that Hagan had normal breathing and no swelling in his legs. R. 25, 411-412. The next month, Dr. Mizra noted that Hagan had unlabored breaths, normal heart sounds, and no edema in his extremities, R. 406-408, and in February of 2012, a physical examination by Dr. Mizra determined that Hagan had normal S1, S2 without gallops, rubs, or murmur, R. 25, 404-405, and Dr. Mizra reassured Hagan that his chest pains were non-cardiac related, R. 408. Second, the ALJ cited to April, 2012, records from nurse Krystal Truss, who

reported that Hagan was negative for chest pain, claudication, and irregular heartbeat and palpitations, and had a regular rate and rhythm with no gallops, or rubs and normal dorsalis pedis pulses, R. 448-450, and the ALJ added that Todd Brown, M.D., a treating cardiologist, and Neiel Covington, a Nurse Practitioner, both observed in October and December of 2012, respectively, cardiac conditions consistent with Krystal Truss's observations, R. 25. 461-466. Finally, the ALJ pointed out that in June of 2012, Hagan underwent a color Doppler study that showed that his LVEF was barely below normal, R. 25, 498-499, and that a February 2013 echocardiogram, as interpreted by Navin Nada, M.D., was essentially normal, R. 25, 469-470.

Based on the court's review of the record, there is substantial evidence in the medical record as a whole that supports the ALJ's determination that, after a reasonable period of recovery from a myocardial infarction, Hagan's physical condition would allow light exertional activities without further exacerbation of his underlying impairments. Moreover, the substantial evidence undermines Hagan's subjective testimony regarding chest pain. Consequently, the court finds that no credible basis exists to reverse the ALJ's decision or to remand the case back to the Commissioner.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Hagan is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 30th Day of December, 2014.

                                                    _____
                                                    **ABDUL K. KALLON**
                                                    UNITED STATES DISTRICT JUDGE